JOURNAL ENTRY AND OPINION
In State v. Siller, (Oct. 28, 1999), Cuyahoga App. No. 75139, unreported, our court affirmed applicant's convictions in Cuyahoga County Court of Common Pleas Case No. CR-361726-B, for felonious assault (R.C.2903.11), aggravated burglary (R.C. 2911.11), aggravated robbery (R.C.2911.01), attempted aggravated murder (R.C. 2903.01), and kidnapping (R.C. 2905.01). This court affirmed that judgment in State v. Siller. The Supreme Court of Ohio dismissed applicant's appeal to that court for the reason that no substantial constitutional question existed and denied applicant's motion for leave to appeal. State v. Siller (2000),88 Ohio St.3d 1443, 725 N.E.2d 284 [Supreme Court of Ohio Case No. 99-2285].
Applicant has filed with the clerk of this court an application for reopening. Applicant asserts that he was denied the effective assistance of appellate counsel because applicant's appellate counsel failed to assign as error that applicant's conviction was not supported by the manifest weight of the evidence and that attempted aggravated murder and felonious assault are allied offenses of similar import. We deny the application for reopening. As required by App.R. 26(B)(6), the reasons for our denial follow.
Applicant's request for reopening is barred by res judicata.
 The principles of res judicata may be applied to bar the further litigation in a criminal case of issues which were raised previously or could have been raised previously in an appeal. See generally State v. Perry
(1967), 10 Ohio St.2d 175, 22 N.E.2d 104, paragraph nine of the syllabus. Claims of ineffective assistance of appellate counsel in an application for reopening may be barred by res judicata unless circumstances render the application of the doctrine unjust. State v. Murnahan
(1992), 63 Ohio St.3d 60, 66, 584 N.E.2d 1204.
State v. Williams (Mar. 4, 1991), Cuyahoga App. No. 57988, unreported, reopening disallowed (Aug. 15, 1994), Motion No. 52164.
New counsel represented applicant in his appeal to the Supreme Court of Ohio. This court has previously held that res judicata bars reopening when new counsel represents an applicant in an appeal to the Supreme Court of Ohio. State v. Kaszas (Sept. 21, 1998), Cuyahoga App. Nos. 72546 and 72547, unreported, reopening disallowed (Aug. 14, 2000), Motion No. 16752, at 3-4. Likewise, this court has held that res judicata bars reopening where a timely application for reopening has been filed and the Supreme Court of Ohio has dismissed applicant's appeal of the conviction. State v. Bluford (Dec. 9, 1999), Cuyahoga App. No. 75228, unreported, reopening disallowed (May 31, 2000), Motion No. 15241, at 2-3 [pro se appeal to the Supreme Court of Ohio dismissed in State v.Bluford (2000), 89 Ohio St.3d 1488, ___ N.E.2d ___, (no substantial constitutional question and discretionary appeal, if applicable, not allowed)].
We also deny the application on the merits. Having reviewed the arguments set forth in the application for reopening in light of the record, we hold that applicant has failed to meet his burden to demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). In State v. Spivey (1998), 84 Ohio St.3d 24, 701 N.E.2d 696, the Supreme Court specified the proof required of an applicant:
 In State v. Reed (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458, we held that the two prong analysis found in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have been successful. Thus [applicant] bears the burden of establishing that there was a "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of counsel on appeal.
Id. at 25. Applicant cannot satisfy either prong of the Strickland
test. We must, therefore, deny the application on the merits.
Applicant was tried with a co-defendant, Walter Zimmer. Both defendants were indicted for and convicted of the same, five charges. State v.Siller (Oct. 28, 1999), Cuyahoga App. No. 75139, unreported, at 5. On direct appeal, this court described the circumstances of the victim which led to these convictions.
 At 3:49 a.m. on June 4, 1997, an anonymous 911 phone call was made from a pay phone on Fleet Avenue in Cleveland reporting that a female had been assaulted at 6211 Hosmer Avenue. Officer Douglas Mendat and his partner responded to the report and discovered that the home was all lit up. After receiving no response to a knock on the front door, the police officers went to the back door which was propped open with the wooden door frame splintered. Because this is a sign of forced entry, the officers entered the home with their weapons drawn. The officers heard the television playing loudly. The house had been ransacked with drawers opened and the contents strewn about the house. The phone was ripped from the dining room wall.
 In the living room, the officers discovered seventy-four year old Lucy Zolkowski sitting propped up in a chair. They heard a noise like a wheezing sound. Zolkowski's night gown had been ripped and shredded, exposing part of the woman's skin. Lucy Zolkowski was beaten, her head having been badly disfigured. Zolkowski's eyes were swollen shut, she had multiple facial fractures, a hole in her chin, and a broken jaw. Zolkowski was breathing with difficulty. Blood was dripping down on her chest and was splattered on the walls behind Lucy Zolkowski's chair.
 Paramedics arrived on the scene and discovered that Lucy Zolkowski's wrists and ankles were bound to the chair with pieces of her night gown. Another piece of cloth was around Zolkowski's neck. Lucy Zolkowski's restraints were so tight that her skin had swollen around the cloth, preventing the police or paramedics from first realizing she was bound. Her skin was bluish in color and much of the blood had dried. Zolkowski was semi-conscious but unable to communicate with anyone: At the time of trial, Lucy Zolkowski remained unable to communicate or respond in any fashion and was living in a nursing home.
Siller, supra, at 1-3.
Applicant's counsel assigns the following errors:
 I. Mr. Siller's conviction is not supported by the manifest weight of the evidence because the State's case was based on the incredible testimony of Jason Smith, who was unworthy of belief by any reasonable factfinder. (Entry of Conviction, Aug. 3, 1998).
 II. The trial court erred when it convicted Mr. Siller for Attempted Aggravated Murder and Felonious Assault because those offenses were committed simultaneously and with the same purpose and are, therefore, allied offenses of similar import. (Tr. 915-16; Entry of Conviction, Aug. 3, 1998)
On direct appeal, counsel for Zimmer asserted four assignments of error, including two comparable to those asserted on behalf of applicant. Statev. Zimmer (Oct. 28, 1999), Cuyahoga App. No. 75138, unreported (decided on the same day and by the same panel as appellant's direct appeal).
In his first assignment of error, applicant contends that Smith was not a credible witness because: he was hiding in a closet when he was arrested; he admitted giving at least two false statements to police; he cooperated with the investigation only after he was told that his girlfriend would testify against him; he confessed to the crimes to another prisoner while in the city jail; and he has an extensive criminal record.
In Zimmer, supra, this court considered the standard for determining whether a conviction is against the manifest weight of the evidence and extensively reviewed the evidence of Smith's credibility.
 In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, citing Tibbs v. Florida (1982), 457 U.S. 31, 102 S. Ct. 2211, 72 L.Ed.2d 652. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary; whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
 Appellant contends that the jury lost its way in finding Jason Smith's testimony credible.
* * *
Smith's testimony was consistent and certain.
* * *
 We can not say that the jurors clearly lost their way in determining that Smith's story was credible.
Zimmer, supra, at 12-15.
In light of the fact that this court rejected essentially the same assignment of error in the direct appeal of applicant's co-defendant after their joint trial and conviction of the same five charges, we cannot conclude either that appellate counsel was deficient or that applicant was prejudiced by the absence of an assignment of error challenging the credibility of Smith's testimony. Applicant's first assignment of error does not, therefore, provide a basis for reopening.
In his second assignment of error, applicant asserts that the trial court erred by not merging felonious assault and attempted aggravated murder because they are allied offenses of similar import under R.C.2941.25.
 This court has set forth a two-tiered test to determine whether two crimes with which a defendant is charged are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
 State v. Blankenship (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. See also State v. Williams (1996), 115 Ohio App.3d 24, 684 N.E.2d 358.
Zimmer, supra, at 15-16.
This court affirmed Zimmer's conviction on all five counts.
 The elements of felonious assault and attempted murder correspond to such a degree that they are allied offenses of similar import. See Williams, supra at 36, State v. Box (1993), 89 Ohio App.3d 614, 626 N.E.2d 996. Appellant [Zimmer] committed the felonious assault and the attempted murder with separate animuses, however. Appellant committed felonious assault when he was beating Lucy for the purposes of obtaining money. Then, appellant committed attempted murder by beating the victim and leaving her gagged and tied to the chair. The victim was left in this condition so she would not be able to identify appellant or assist in his apprehension. Because appellant committed felonious assault and attempted murder with two different motives, appellant could be convicted and sentenced for both offenses.
Zimmer, supra, at 16.
Siller's appellate counsel assigned as error that the trial court erred by not merging Siller's sentence for kidnapping with his sentences for attempted aggravated murder and aggravated robbery. Prior to concluding that kidnapping and attempted murder are not allied offenses of similar import, this court summarized the conduct of Siller and Zimmer.
 Appellant [Siller] and Zimmer tore Lucy Zolkowski's nightgown and used the pieces to tightly bind the seventy-four year old's wrists and feet. Another piece of cloth garrotted Zolkowski's neck, restricting her ability to breath [sic]. Zolkowski was left bound to her chair for hours, allowing her tissues to swell to such a degree that police and paramedics did not at first realize she was restrained. Zolkowski's restraint was prolonged and substantially increased the harm she suffered separate and apart from the beating which led to the attempted aggravated murder conviction. As noted in State v. Benasutti, 1996 Ohio App. LEXIS 3091 (July 19, 1996) Clark App. No. 95 CA 109, unreported, one can purposefully cause the death of another without restraining him or removing him from the place he was found. The restraint was hardly necessary to carry out the attempted murder, especially when these two men were faced with an elderly, nearly helpless victim.
Siller, supra, at 10-11.
As noted in Zimmer, supra, at 16, Siller and Zimmer engaged in a course of conduct which first involved beating and robbing Lucy Zolkowski. Later, she was restrained to such a degree and for such a long period of time that the restraint enhanced her injuries. Clearly, the jury could reasonably find that Siller committed felonious assault in the first instance with a separate animus from that which resulted in attempted aggravated murder. We cannot, therefore, conclude that there was a "reasonable probability" that Siller would have been successful if his appellate counsel had asserted that the trial court erred by not merging felonious assault and attempted aggravated murder. Applicant's second assignment of error does not, therefore, provide a basis for reopening.
As a consequence, applicant has not met the standard for reopening. Accordingly, the application for reopening is denied.
KENNETH A. ROCCO, J., PATRICIA A. BLACKMON, J., CONCUR